UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KURT M.[1],                                Case No. 1:23-cv-459
    Plaintiff,                       McFarland, J.
                                        Litkovitz, M.J.
   vs.

COMMISSIONER OF                 **REPORT AND**
SOCIAL SECURITY,                **RECOMMENDATION**
    Defendant.

Plaintiff brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's statement of errors (Doc. 7), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply memorandum (Doc. 11).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB on April 9, 2021, alleging an amended disability onset date beginning November 20, 2013, due to high blood pressure, high cholesterol, cystic fibrosis, and anxiety. (Tr. 148-49, 171; *see also* Tr. 164). His application was denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Christopher S. Tindale. Plaintiff and a vocational expert ("VE") appeared by telephone and testified at the ALJ hearing on June 1, 2022. (Tr. 35–57). On July 26, 2022, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 13-34). This

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

decision became the final decision of the Commissioner when the Appeals Council denied review on May 23, 2023. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

   1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

   2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

   3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

   4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

   5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2015.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of November 20, 2013 through his date last insured of March 31, 2015 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, [plaintiff] had the following severe impairments: disorders of the spine, diabetes mellitus, respiratory disorder, pancreatic disorder; and genetic disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, [plaintiff] had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except he is further limited to occasionally stooping, crawling, or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently kneeling and crouching; avoiding concentrated exposure to extreme cold, extreme heat, high humidity, and pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; avoiding all exposure to dangerous hazards such as unprotected heights and dangerous machinery; never driving commercially; and occasionally reaching overhead with the right upper extremity.

6. Through the date last insured, [plaintiff] was capable of performing past relevant work as an attorney. This work did not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565).

[Plaintiff] was born [in]… 1966 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563). [Plaintiff] has at least a high school education (20 CFR 404.1564). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).[2]

7. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from November 20, 2013, the amended alleged onset date, through March 31, 2015, the date last insured (20 CFR 404.1520(f)).

(Tr. 19-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2] The ALJ relied on the VE's testimony to additionally find that an individual with plaintiff's age, education, work experience, and residual functional capacity would be able to perform the requirements of representative unskilled, light occupations in the national economy such as office helper/sorter (105,881 jobs nationally) and merchandise marker (61,844 jobs nationally) as well as representative unskilled, sedentary occupations in the national economy such as document preparer (18,204 jobs nationally), tube operator (2,114 jobs nationally), and addresser (2,092 jobs nationally). (Tr. 28-29, 54).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

D. **Specific Errors**

In his statement of errors, plaintiff contends that the ALJ erred in his evaluation of plaintiff's symptom severity by selectively focusing on records that indicate improvement with treatment. (Doc. 7 at PAGEID 1696-1700). In response, the Commissioner contends that the ALJ properly evaluated the medical evidence as it related to plaintiff's subjective symptom complaints and determined an appropriate RFC to correspond with this evaluation. (Doc. 10 at PAGEID 1709-17).

E. **Analysis**

   1. **Challenges to the ALJ's evaluation of the medical source opinions have been waived.**

Plaintiff contends that the ALJ "erred in evaluating [plaintiff's] symptom severity and the medical opinions of his treating doctors." (Doc. 7 at PAGEID 1692). However, his argument addresses only the ALJ's alleged under-appreciation of plaintiff's chronic pain. (*Id.* at PAGEID 1696-1700). Plaintiff does not argue that the ALJ failed to evaluate the medical opinions as

required by 20 C.F.R. § 404.1520c(c), and plaintiff does not address the supportability or consistency of the medical opinions with citations to the record.

The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013). *See also McCafferty v. Comm'r of Soc. Sec.*, No. 22-3865, 2023 WL 3737511, at *1 (6th Cir. May 31, 2023) ("We do not address arguments raised in a perfunctory manner or unsupported by record citation.") (citing *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Therefore, to the extent plaintiff contends that the ALJ erred in evaluating the persuasiveness of a medical opinion, that argument is waived. Plaintiff's contention that the ALJ undervalued plaintiff's allegedly disabling chronic pain will be addressed below.

### 2. Substantial evidence supports the ALJ's symptom severity evaluation.

ALJs must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate the "consistency" of a claimant's subjective description of symptoms with the

record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Plaintiff contends that the ALJ undervalued plaintiff's symptom severity, as supported by the medical records of Kendall Hansen, M.D., and Stephen Eckart, M.D., and cherry-picked statements regarding plaintiff's pain control and activity level to support his symptom severity assessment. (Doc. 7 at PAGEID 1696-1700; Doc. 11 at PAGEID 1719). Although acknowledging that plaintiff's symptoms sometimes fluctuated, plaintiff contends that "the longitudinal record supports chronic, mostly uncontrolled disabling pain." (Doc. 7 at PAGEID 1700; Doc. 11 at PAGEID 1722) (same quotation).

In applying the two-step inquiry, the ALJ identified the following underlying medically determinable impairments that could reasonably be expected to produce plaintiff's symptoms: disorders of the spine, diabetes mellitus, respiratory disorder, pancreatic disorder, and genetic disorder. (Tr. 19, 22-23). However, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23).

The issue, then, is whether the ALJ's evaluation of the intensity, persistence, and limiting effects of plaintiff's pain is supported by substantial evidence. Plaintiff identifies the alleged onset date as November 20, 2013, and the ALJ determined that plaintiff last met the insured status requirements of the Social Security Act on March 31, 2015. (Tr. 19). As the "period of disability can commence only while an applicant is fully insured," plaintiff must establish that he was disabled prior to March 31, 2015 to be entitled to DIB. *Wallace v. Comm'r of Soc. Sec.*, No. 2:16-cv-971, 2018 WL 707567, at *6 (S.D. Ohio Feb. 5, 2018) (citing 42 U.S.C. § 416(i)(2)(c)). *See also Jones v. Comm'r of Soc. Sec.*, No. 96-2173, 1997 WL 413641, at *1 (6th Cir. July 17, 1997) ("A 'period of disability' can commence only while an applicant is fully insured.") (quoting 42 U.S.C. § 416(i)(2)(c)).

*a. Kendall Hansen, M.D., and Michael Fletcher, M.D., Pain Specialists*

During the relevant period from November 20, 2013 through March 31, 2015, plaintiff treated with Intervention Pain Specialists, Kendall Hansen, M.D., and Michael Fletcher, M.D. Plaintiff consulted pain specialist Kendall Hansen, M.D., on November 20, 2013. (Tr. 23). Dr. Hansen observed antalgic gait with left leg limp, normal lower extremity muscle tone, severe lumbar spasm, lumbar tenderness, and positive straight leg raising. (Tr. 242-45). Dr. Hansen ordered an EMG and CT scan. (Tr. 245).

The CT scan showed multilevel discogenic disease with foraminal narrowing, L5-S1 level narrowing, and potential nerve root impingement. (Tr. 247). Plaintiff was treated with epidural injections, with 60% improvement, and physical therapy. (Tr. 248-25, 381-95). When seen by Dr. Hansen for medication management in March 2014, plaintiff reported pain levels of 3 to 7 on a 0-10 visual analog scale with 50% relief with pain medication. (Tr. 259).

In April 2014, plaintiff underwent a sympathetic nerve block procedure. (Tr. 263-65). Plaintiff reported "great relief" following the procedure, but his pain returned after three weeks. (Tr. 266). By May 2014, plaintiff suffered from shoulder pain in addition to leg and back pain. Dr. Hansen noted post-herpetic polyneuropathy with moderate to severe shoulder pain. However, plaintiff reported 50% pain relief with medication and 80% relief with lumbar epidural steroid injections. (Tr. 266-69).

In June 2014, plaintiff reported that his pain severity had returned to a level 7 on a 0-10 visual analog scale, with the pain occurring primarily in his shoulder. (Tr. 274). Prescribed medications relieved his pain by 50%, and plaintiff reported that he worked full time. (*Id.*). He had no new difficulty with activities of daily living, and he suffered no side effects from the medications prescribed. (Tr. 275). Although his pain had risen to level 7, plaintiff "reports an improvement in shoulder pain and mobility and functionality" and "admits to increasing his activity this past month." (*Id.*).

In July 2014, Plaintiff rated his pain severity at a level 0 on a 0-10 visual analog scale and noted only mild pain. (Tr. 278). Dr. Hansen noted that plaintiff's pain "is fluctuating" and "occurs intermittently." (*Id.*). Plaintiff reported the ability to ascend and descend stairs, complete community errands, complete cooking activities, don and doff shirts and jackets, don and doff shoes and socks, drive, get into and out of a bathtub, get in and out of a vehicle, reach for a

seatbelt, sit for 60 minutes, sleep on his affected side, squat and kneel for activities of daily living, stand from a seated position, style his hair, tuck in his shirt, walk household distances, walk community distances, walk 30 minutes, and wash himself and his hair. (*Id.*). Dr. Hansen noted that plaintiff reported 90% pain relief with medications. (*Id.*).

In August 2014, plaintiff reported pain at a level 6 on a 0-10 visual analog scale. (Tr. 282). Dr. Hansen noted that plaintiff's abdominal pain had worsened and was "aggravated by pressure to abdomen, bending over and excessive activity." (*Id.*). His low back and shoulder pain continued to occur intermittently and to fluctuate. (*Id.*). Plaintiff indicated "overall pain relief of 90% while using prescribed medication(s)." (*Id.*). However, on August 29, 2014, Dr. Hansen increased plaintiff's medication dosage "due to inadequate analgesia." (Tr. 287).

In October 2014, plaintiff reported a pain level of 7 with overall pain relief of 90% while using prescribed medications. (Tr. 290).[3] Dr. Hansen indicated that plaintiff's activity and functionality had improved and he was having no new difficulty with ambulation or activities of daily living. Dr. Hansen decreased plaintiff's medication dosages. (Tr. 291-92).

On October 22, 2014, plaintiff reported a pain level of 5 on the 0-10 scale. (Tr. 294). Dr. Hansen noted that plaintiff obtained "good analgesia with current medication/regimen," suffered no side effects, and agreed to continue the present medications. (Tr. 295).

At his next visit, in December 2014, plaintiff rated his pain at a level 2 on the 0-10 visual analog scale. (Tr. 298). He noted overall pain relief of 90% on prescribed medications. (*Id.*).

---

[3] Dr. Hansen noted that Plaintiff was "disabled." (Tr. 290). The ALJ found this assessment "neither valuable or persuasive" as it was "conclusory and based on claimant's subjective allegations." (Tr. 27). At various times during the relevant period, Drs. Hansen and Fletcher described plaintiff as "disabled," "works full time," and "works part time." (Tr. 266, 274, 278, 282, 290, 294, 298, 303, 317). "Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner." *Katherine K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-563, 2022 WL 71628, at *6 (S.D. Ohio Jan. 7, 2022) (citing 20 C.F.R. § 404.1520b(c)(3)(i); *see also Worner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

In January 2015, plaintiff's pain reported as level 5 on the 0-10 visual analog scale. (Tr. 303). While his pain had reached a level 8 during the past 24 hours, Dr. Fletcher noted overall pain relief of 90% on prescribed medications. (*Id.*). Plaintiff again reported no side effects and good analgesia, and he agreed to continue on the same medication regimen. (Tr. 304). However, plaintiff requested a topical prescription-strength pain treatment, Qutenza, which was later provided. (Tr. 305).

In February 2015, plaintiff reported his pain at level 6 with pain as high as level 8 experienced in the 24 hours prior to his consultation. (Tr. 312). He again reported overall pain relief of 90% while using prescribed medications. (*Id.*). Dr. Fletcher's staff again noted no new difficulties with ambulation or activities of daily living, no side effects, and good analgesia with his current medication regimen. (Tr. 313).

On March 9, 2015, plaintiff reported that he works full time and his pain was at a level 6 on the 0-10 scale. (Tr. 317). Although his pain had been as high as level 8 within the 24 hours prior to his consultation, he again indicated overall pain relief of 90% while using prescribed medications. (*Id.*). Dr. Fletcher again noted new difficulties with ambulation or activities of daily living, no side effects, and good analgesia with his current medication regimen. (Tr. 318). Dr. Fletcher further noted "the decision was made to continue the patient on current medications. Qutenza application reduced PHN 60% with ongoing relief." (Tr. 320).

### b. The ALJ's Symptom Severity Evaluation

In evaluating the intensity, persistence, or limiting effects of plaintiff's symptoms, the ALJ concluded that:

> [Plaintiff]'s allegations are not supported by the record to the level alleged. Specifically, pain records noted fairly mild to only moderate levels of pain, with 50-90% reported relief with the medication regimen, and no side effects (he testified to some). Also, the medical evidence of record repeatedly notes that

12

> [plaintiff] was performing sporadic levels of full-time, part-time, and no work. [Plaintiff]'s representative emphasized the subjective claims made to pain management records during the relevant period, but many to most of those records do not contain any objective examinations to support the complaints. Significantly, objective treatment evidence indicates he was fairly normal on examination and most of the pain records indicate only low to moderate pain level ranging from a 2 to 7 level on a 10-point scale. And, while the subsequent record shows some worsening symptoms with new diagnoses, this worsening does not relate back to prior to the date last insured.

(Tr. 26).

In reaching this conclusion, the ALJ completed a thorough review of plaintiff's medical records and considered plaintiff's daily activities; location, duration, frequency, and intensity of his pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of his medications; other treatments; and other factors concerning his functional limitations and restrictions due to his pain. (Tr. 23-27). Specifically, the ALJ noted that between the alleged onset date of November 20, 2013 and the date last insured, March 31, 2015, plaintiff reported walking a mile without increased pain. (Tr. 23, citing Tr. 389). He further noted plaintiff's ability to ascend and descend stairs; complete community errands; complete cooking activities; don and doff shirts, jackets, shoes, and socks; drive; get into and out of the bathtub; get into and out of a vehicle; reach for a seatbelt; sit for 60 minutes; sleep on his affected side; squat and kneel for activities of daily living; stand from a seated position; perform personal hygiene activities; walk household distances; walk community distances; and walk for 30 minutes. (Tr. 24, citing Tr. 278). Plaintiff correctly notes that the ability to perform activities of daily living does not automatically equate to the ability to maintain full-time employment (Doc. 7 at PAGEID 1699-1700), but the ALJ properly considered this evidence to evaluate plaintiff's symptom severity. *Corinne C. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1034, 2022 WL 1590818, at *17 (S.D. Ohio May 19, 2022) (citing *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013); 20

13

C.F.R. § 404.1529(c)(3); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, [a]n ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.").

The ALJ also considered the location, duration, frequency, and intensity of plaintiff's pain. Specifically, the ALJ noted that, on the alleged onset date in November 2013, plaintiff's pain specialist observed antalgic gate with left leg limp, severe lumbar spasm, lumbar tenderness, and positive straight leg raising. (Tr. 23, citing Tr. 242-45). He was diagnosed with radiculopathy and lumbosacral arthritis. (*Id.*). The ALJ further reviewed plaintiff's pain as reported in December 2013, March 2014, April 2014, May 2014, June 2014, July 2014, August 2014, October 2014, December 2014, and January through March 2015 (the month last insured). (Tr. 23-24).

The ALJ noted that plaintiff reported severe right shoulder pain with post-herpetic polyneuropathy in January 2015, but the accompanying examinations revealed normal range of motion and pulmonary findings, no musculoskeletal edema, and an active insulin pump with normal bowel sounds, and that plaintiff was intact neurologically. (Tr. 24, citing Tr. 303, 647-48). The ALJ discussed plaintiff's intermittent abdominal pain, history of pancreatitis with total pancreatectomy and islet cell transplant, and abdominal adhesions from previous surgeries. (Tr. 24, citing Tr. 402-04). The ALJ reviewed chest and abdominal pain plaintiff suffered in August 2014 while mowing his lawn. Noting normal cardiac and pulmonary examinations, normal bowel sounds without distension or guarding, a lack of musculoskeletal edema or tenderness, and x-ray, EKG and CT scan results, the emergency room doctor diagnosed chronic chest pain, epigastric

abdominal pain, and thrombocytopenia, and treated plaintiff with Acetaminophen and Pepcid. (Tr. 25, citing Tr. 371-76).

The ALJ considered the abdominal pain plaintiff suffered in September 2014 that led to a pneumonia diagnosis and the November 2014 complaints of increased abdominal pain. (Tr. 25, citing Tr. 344-50, 650-52). The resulting physical examination revealed normal heart and lungs, normal bowel sounds, no abdominal tenderness, no musculoskeletal edema, and normal neurological signs, but pneumobilia was evident. (Tr. 25, citing Tr. 650-52).

Finally, the ALJ considered the medications, treatments, and other measures used to relieve plaintiff's pain. Specifically, the ALJ noted that plaintiff takes arthritis medications as well as Percocet, Masadone injections, and Klonopin; underwent spinal cord stimulator placement and epidural steroid injections; and participated in physical therapy. (Tr. 23-24). The ALJ cited to various medical records indicating that plaintiff's treatment regimen controlled plaintiff's pain from 50 percent relief to 90 percent relief throughout the relevant period from November 20, 2013 through March 31, 2015. (Tr. 23-24, citing Tr. 248, 259, 265-66, 274, 278, 282, 286, 290-91, 298, 303, 307, 312, 317, 402, 952, 955, 964, 972, 984, and 991).

Because the ALJ reasonably considered the factors contained in 20 C.F.R. § 404.1529(c)(3) in evaluating the severity of plaintiff's pain and other symptoms, his analysis is supported by substantial evidence. Plaintiff contends that the ALJ selectively focused on evidence that supports his conclusion to the exclusion of the record as a whole. (Doc. 11 at PAGEID 1719-20).

As courts have explained:

Generally, an ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise be appropriate. *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D. Ohio, March. 11, 2013) (citations omitted). However, an ALJ does not cherry-pick

15

> the record simply by resolving discrepancies in the record against the claimant. *Id.* Moreover, the undersigned does not conduct a de novo review of the record, and an ALJ's findings are not subject to reversal for the sole reason that substantial evidence could support the opposite finding[.] *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). What some describe as "cherry-picking" may more neutrally be termed weighing the evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

*Coppage v. Berryhill*, No. 1:16-cv-00144, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017), *report and recommendation adopted,* 2018 WL 305336 (W.D. Ky. Jan. 5, 2018); *see also DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry-picking" arguments are seldom successful because they require the impermissible reweighing of evidence) and *Solembrino v. Astrue*, No. 1:10-cv-1017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011) (an ALJ "does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a [plaintiff]'s position.").

In support of his contention, plaintiff cites to his report to Dr. Hansen on November 20, 2013 that his pain was negatively affecting his ability to ascend and descend stairs, travel for work, complete community errands, walk household distances, stand from a seated position, sit for more than 30 minutes, and sleep on the affected side. (Doc. 7 at PAGEID 1696-97, citing Tr. 242-46). However, Dr. Hansen's November 20, 2013 notes also indicate that, although plaintiff's gait was antalgic and had a compensated left leg limp, plaintiff was full weight bearing and required no assistive device. (Tr. 244). Dr. Hansen's examination revealed normal posture, normal lower extremity muscle tone, mild flexion and extension restrictions but no crepitus, hip pain, instability, swelling, or effusion. (*Id.*). In addition, plaintiff reported that he had waxing and waning periods of lower back and leg pain for several years with three exacerbations in the last two months. (Tr. 245). As the ALJ noted, plaintiff responded to treatment and reported walking a mile without an increase in pain less than one month later. (Tr. 23). The other records

16

on which plaintiff relies are similarly unavailing because, as detailed above, the ALJ discussed each of them in explaining why he concluded that plaintiff's pain is "not supported by the record to the level alleged." (Tr. 26).

Plaintiff also references, in passing, the opinion of "treating source" Stephen Eckart, M.D. (Doc. 7 at PAGEID 1696). However, plaintiff made no effort at developing an argument concerning Dr. Eckart's opinion. In addition, as the ALJ accurately determined, Dr. Eckart did not treat plaintiff until six years after the date last insured and his opinion merely recited plaintiff's subjective reports from seven years earlier. (Tr. 26-27, citing Tr. 877).

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 7) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 7/11/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

KURT M.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:23-cv-459
McFarland, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).